Good morning. I'd like to reserve three minutes for rebuttal. May it please the Court, my name is Doug Smith and I represent Appellant Richard Turay. I have to apologize, I have a slight cold, so feel free to let me know if you don't understand anything that I'm saying. This case involves a fundamental requirement underlying the constitutionality of the Washington Civil Commitment Statute. Both this Court and the Supreme Court have repeatedly held that in order to support the constitutionality of such a statute, there must be provision of constitutionally adequate treatment. And over the 17-year history of the SEC, both this Court and the District Court have repeatedly found that no such treatment exists at the SEC. The current record in this case shows that nothing has changed, and in fact, in many respects, conditions have become much worse at the SEC. Mr. Turay challenges the dissolution of the injunction on three grounds. The first, the District Court erred in dissolving the injunction after it specifically found that there had been backsliding by the SEC. That's what confuses me about this. In fact, most of the injunction was dissolved a while ago when there was an appeal to this Court about that. And there was just a small piece of it left. And that's – and I understand that the former – the earlier order said something like provided there's been no significant backsliding. But procedurally is what's confusing me, is whether the – there's any argument that the old injunction just – let's assume there was significant backsliding. Then what? Would the old injunction just pop up, or would you have to prove anew what the problems were and what the injunction really for that should be? Well, Your Honor, I think that Judge Lasnik's order is best viewed as imposing a condition on termination of the injunction. Judge Lasnik was clear in saying the injunction shall not be lifted if there is backsliding. Well, the piece of the injunction still existed, but what about all the rest of it that had already been dissolved? Well, with respect to the rest of it, as long as we show that there had been backsliding and the district court found that there was backsliding, the injunction should not be terminated. Did it need to show backsliding, or did it need to show the events are constitutionally significant? Because there seems to me to be a difference between that both semantically and legally. Well, under the terms of Judge Lasnik's order, all that we have to do is show that there was backsliding. Did he change the order? Is it a delocatory order? Well, this court affirmed the order on appeal, Judge Lasnik's order. So what? Well, the court didn't purport to change the order. There was nothing in the district court's decision saying, I'm getting rid of the backsliding requirement. In fact, it reaffirmed that there was a backsliding requirement and said, I'm not going to lift the injunction because even though there's backsliding, it's not constitutionally significant. What's the worst example of backsliding you can demonstrate here? Wow, there's so many in the record. Worst one. Well, I think it was particularly damaging that the IOCC issued a highly critical report saying there was all these serious problems, and then the SEC terminated the committee and replaced them with a completely new group of people. Is it constitutional to do that? Well, this court in Sharpe indicated that one of the critical features of the or inadequacies in the SEC program was a lack of external oversight. But they put in another kind of oversight. That's true, but they indisputably interfered with the independence of the oversight body. I mean, if they can just replace it. Aside from my problem, which is whether you have to at least start over again in terms of demonstrating what the problems are, but do you have to prove that it was each individual thing was unconstitutional or that the remedy that was designed to come to a constitutional level wasn't in effect anymore? In other words, there's a lot of language in the case law saying each piece of an injunction doesn't have to remedy a constitutional problem. Yes, Your Honor. So which is it at this juncture, the injunction having been mostly lifted? Well, I take it one step back and just think about the procedural posture of this case. This order was on the SEC's motion, and it was indisputed that there was a condition for termination of the injunction that there be no backsliding. So they had the burden of proving that that condition was in fact met before the injunction was terminated. Now, with respect to your question about, well, what should the district court do here, with respect to all of these allegations or actually findings in the IOCC report that there wasn't adequate treatment or medical services and all of these other things, I believe, and I think the record shows, that there are constitutional violations that are still in effect here. I think it would be improper, even if they didn't amount to constitutional violations, to dissolve the injunction as long as there was a finding of backsliding. But the record- Judge Lasnik is the judge that dissolved it. It was affirmed on appeal, and he now issues another order that says there's not any significant backsliding. Well, Your Honor, it was- Why is he not the one that's determining the baseline? So he has to either be legally wrong or factually wrong. Well, I think that the judge here was both legally and factually wrong. It was actually Judge Martinez that issued the order that's on appeal right now. And so Judge Martinez said or acknowledged that I cannot lift this unless this condition is met. There was nothing in the order saying I'm getting rid of the condition that Judge Lasnik imposed. There was nothing in any of his statements during the proceedings indicating that he was getting rid of that condition. And he just kind of brushed by it saying, well, I know there is backsliding, but it doesn't amount to a constitutional violation. I'm going to accept the representations of the SEC administrators. That's why I'm asking you, what's the worst example you can point to of some kind of existing constitutional violation? Well, they said that the- Told me that the oversight committee was chained. Okay, what else have you got? The treatment program was inadequate. In what way? Well, there were not sufficient treatment programs. The SEC found that there wasn't sufficient treatment programs. Treatment participation has dropped dramatically. There's only a small fraction of the population that's actually enrolled in treatment at all. In addition, medical services, the IOCC found that there were inadequate medical services, inadequate medical record keeping. They came up with evidence to explain that, all of that, didn't they? No. I don't think there's any dispute that there's been medical errors or inadequate- Well, medical errors, I mean, there were medical errors at every hospital. But from a constitutional level, they came forward with evidence to contradict your evidence. Well, that's not actually right. In our reply brief, we noted all of the areas in which there wasn't any contradiction. There was no rebuttal of the evidence. And, in fact, if you look at Superintendent Richard's declaration that he submitted, he had indicated that while he disagreed with the tone of the final report issued by the IOCC on page 355 of the record, he said in response to the IOCC's preliminary report that led to that 2006 report, that the SEC rarely contested any of the IOCC observations. And Dr. Briody, who was the head of the IOCC committee, in his affidavit at page 469 of the record, he noted that the SEC management has acknowledged many of the problems identified by the IOCC. So there was a lot of smoke and mirrors in their brief about, you know, various minor things that they disputed. I was a little disappointed in some of the representations in your brief. For example, you said that the defendants had conceded that the court must look beyond the SEC's assertions of compliance. And then when you go to the red brief, they don't say anything of the kind. They say that in Sharpe, the court did not abuse its discretion in looking beyond. And the other thing that concerned me that I'd like you to reply to was... Which page was that, Your Honor? It was page 3, note 1 of your brief, page 15 and 16 of their brief. And the other point that really did concern me was the reliance on Dr. Marquez. Without acknowledging that all of her declaration was prefaced with the statement, she said, I'm not in a position to determine if the problems are sufficient to justify continued supervision. And she also said, I haven't been involved for five years. So I was concerned about the representations in your brief that her affidavit was somehow the basis that you need continued judicial oversight. Can you explain what you're relying on in light of what is, I think, a huge disclaimer at the outset of her declaration? In the Marquez declaration, we never... That, quite frankly, Your Honor, I think they took out of context what we said in our brief. The only point that we were relying on that for... Well, I'm looking at your brief, so I don't know if they took it out. But I read your brief, and then I went and read her affidavit or declaration. Her affidavit, the only thing we were relying on that for was the treatment program. I mean, the oversight, rather. In her affidavit, she says in paragraph 8, this is on page 193, As the record in this matter shows, there seems to be an agreement that the reason IOCC did not serve the purpose it was intended. And then she goes on to say that the court should be concerned about whether external oversight mechanisms that were put in place on my recommendation will be effective in the absence of general judicial supervision. And... She said if the court agrees with her view about whether it's unclear at this point, correct? That's in it. If she says if the court agrees with her in a different paragraph. I'm reading from paragraph... I guess that's my point. I think your brief is misleading on this point, the way that it's selectively quoted in light of the overall thrust of her affidavit. Well, I hate to disagree with the court, but I think that... You can do that. I just want to point out to you that there's at least two instances that seem quite clear here. Then I'm looking, okay, we can't rely on Dr. Marquez. And we're back to Judge Silverman's question. Where do we look to find the constitutional violation? You have some disagreement. You have some findings that there are some issues. But the fact that there are issues or, quote, problems doesn't necessarily mean the injunction should be reinstated. Well, here's what I would say about that. I would look at the IOCC report, the 2006 report. I would look at Dr. Briody's affidavit where he said that these issues that the IOCC raised go to the heart of the constitutional requirements. They haven't cited any IOCC report. What troubles me most is what standard are we supposed to be applying here? What should the district court have applied? The district court said that while plaintiffs have demonstrated that some backsliding has occurred with respect to the treatment program at issue in this case, those allegations would not rise to the level of a constitutional violation requiring this court to reinstate the injunctive relief previously granted by this court. Now, is that the right standard, i.e., whether the backsliding arose to the level of a constitutional violation? I don't know the answer to that. That seems to me to be the key question here. Or is it whether there was significant backsliding in what was determined to be the remedy necessary to remedy a constitutional violation, so you don't look at whether the backsliding itself is a constitutional violation? Which one is it? What are we doing here? Your Honor, our position would be that if there is backsliding, the court should not have dissolved the injunction. But then we're back to the fact that the injunction was already dissolved in large part. Yes, and then I would say I was going to add that even if the backsliding had to amount to a constitutional violation and we dispute that it did have to amount to a constitutional violation, then the record here would support reversal because the things that are identified in the IOCC report and Dr. Briody's declaration are the exact same things that this Court relied on and Sharpe in affirming continued. If we could have made more sense at this juncture, the injunction already had been dissolved, but the case still existing and not having been dismissed, you could have come in and said we need a new injunction in the following respects and litigated that rather than trying to get the whole old injunction to pop back in again. But that's not where we are, right? You were trying to just get the whole former injunction back. Is that what you were asking for? Well, with respect to the issues identified where there was backsliding, if there was some issue in the original injunction that no evidence was presented as to backsliding on, then that issue would not pop back up. It would be whatever there was evidence of backsliding in the record that was presented. You're just about out of your time. I know you wanted to reserve three minutes, and you have 30 seconds left. You've got to reserve what you've got. Thanks very much, Mr. Smith. Good morning. Good morning, Your Honor. May it please the Court, my name is William Van Hook. I'm an Assistant Attorney General for the State of Washington, and like Mr. Smith, I'm also suffering from some congestion this morning, and I apologize. As this Court has focused so far, it's very important to understand and for the Court to be cognizant of the procedural posture of the case in 2006. As you've already pointed out, this case was largely dissolved in 2004 when the district court looked at the complaint. It wasn't dissolved, the injunction wasn't dissolved, and that's important because the case was still there, and if there was a need for an injunction, it could have been instituted. Right, and being precise, Your Honor, yes, there were conditions of the injunction that were dissolved. The case was still there. There was a condition going forward that the SEC, the Special Commitment Center, provide off-island, less restrictive alternative. In 2006, we did move for the dissolution of the injunction. As to that one point, on stipulation with the parties, the plaintiffs, that the LRA, the King County LRA, was in existence at that point, and there was a protocol for its operation. That was stipulated, it was presented to the Court on January 13, 2006. Also at that hearing, there was a protocol established for the way to go forward in this case, and specifically it had to do with how the evidence of whatever the parties thought were germane to whether the case would ultimately be dissolved or the remainder be dissolved and the case dismissed, whether that was how to approach those issues, and quite simply it was done. It was decided that it would be handled as would a summary judgment that offers a proof that the Court would look at and then decide whether it needed further evidence. One thing that I find troublesome is that we have very little to go on here in terms of the district court's evaluation. I mean, his opinions are quite opaque as to what he thought about the fairly large, there's a little material there but not a whole lot, about the various findings of this committee that were really quite damning, and he really doesn't say too much about. Well, I think what I would like to talk to the Court about, Judge, is the IOCC report itself and the characterization that it was quite damning is possibly and undoubtedly not exactly the case. If the Court inspects the IOCC report, I would like to look at it. I read it all. There are ratings for each standard, meets expectation, does not meet expectation, and then there's a middle standard, and then there's a final standard not rated. If you look at those, the SEC met standard in every aspect of the report, every one except for one, and that was whether we searched resident rooms often and thoroughly enough. Now, what you see in Dr. Briody's report and declaration. The report had many standards in which the conclusion was something like minimally meets the standards or very much needs improvement or stuff like that. I think it was minimally meets minimum standards or minimally meets standards needs improvement, and I think you can look at that as a B, C, or D, but D is still passing. The only one where they said does not meet standards was the one issue, and that had to do with room searches. Then there was verbiage, and it's very much like the report card that says, Johnny passed algebra, but he would have gotten a B if he had been able to do quadratic equations better, and that's what we're talking about in the verbiage that Dr. Briody then excerpted and put in his declaration, that he was, even though the standard was met, either minimally or maximally, he then says, the verbiage says this is how you need to improve further. What about the concern? I mean, this case has a long and troubled history in reading Judge Dwyer's orders from the beginning forward. It's quite clear how troubled he was. The question I have is going forward, two issues. One, why isn't there some justification for continued oversight? And second, if there's not continued oversight, is there anything that would preclude plaintiffs from filing a new lawsuit for current conditions that, in their view, were included in the injunction that had been dissolved? Well, the reason why there shouldn't be continued oversight is Milliken, and Milliken says pretty much that you have to have a constitutional violation in order to have court supervision. And when we met the last standard in Judge Lasnik's order, the LRA requirement, and that was stipulated to, the court found that there was no further constitutional violation. And in inspecting the evidence that was offered by offer of proof by the parties, it looked at whether there was backsliding, and it is significant backsliding, and I think that that's not an inconsequential difference between backsliding and significant backsliding in Judge Lasnik's order. It says there is no significant backsliding. He never quite said that. When did he ever say that? In Judge Lasnik's order? No, in Judge Martinez's order. Well, he said there was backsliding, but he said it did not rise to the level. Yeah, but he never said it wasn't significant backsliding. There's a difference. In other words, if you're at point A and you backslide to point B, and that's significant in terms of a lot, but maybe not enough to the point that B is now a constitutional violation itself. But my legal question is, does that matter when the original injunction was put in place to cure a constitutional violation? And we know that the remedy can be different than the constitutional violation itself. So should we be looking at whether or not you're now at a constitutionally violative point or whether you have significantly backslid from a remedy that was correctly devised to cure a prior constitutional problem? Well, there has to be a constitutional violation to cure. I understand that, but there was. At least that's for the case that there was. There was in 94, and there was continuing forward until 2004. As to the treatment program. Okay. I think what you look at, then, is the Youngberg standard and whether we are exercising professional judgment, whether the SEC was exercising it. But that is the constitution. That's what I'm trying to isolate. Whether what we now would look at is whether the current situation is a constitutional violation despite the backsliding or whether there was significant backsliding from a remedy properly devised to cure an earlier constitutional violation. They're not the same thing. And that seems to me to be the core of the legal problem here. Well, if professional judgment is being exercised, even if that ‑‑ I think that that's the floor. And I understand that that's the constitutional violation or the constitutional standard. I think that that is the answer to your question is, yes, it does have to be. The proof of backsliding does have to establish a new constitutional violation. That would be our answer. Why? Because when the court dismissed or not dismissed, but dissolved the injunction in 2004, it said this is now constitutional. I am dissolving this injunction, these requirements, because the defendants have now made this a constitutional problem. Well, now, you hadn't quite ‑‑ maybe this leads to my second question then. Is there anything that would preclude the plaintiffs from taking a look at current conditions and picking out various issues that in their view constitute unconstitutional conditions and filing a new suit? I don't think so, Your Honor. I mean, that was briefed below, and that was what ‑‑ Well, it's not a new suit. This one is actually dismissed now. Right. Now that this case ‑‑ if this case is now dismissed, there is nothing to preclude plaintiffs from alleging new constitutional violations. I don't think the law would support it. I think the Supreme Court may have even spoken to that. I'd like to hear that from the Attorney General's office. Well, and I think that that was the position we took below, is that indeed a new violation is a new violation, and they're not precluded from filing on that. And as a matter of judicial notice, you can notice that we defend suits in federal district court here at all times having to do with the conditions of confinement at the SEC. So, I mean, we're universally successful in defending those, but we do ‑‑ we have cases currently pending having to do with the conditions. Can you tell me what oversight there is at the facility? Well, number one, there's a government. These are all provided for in the Washington Administrative Code. There is what? I'm sorry. You said number one, there is ‑‑ Number one, there is a governing body, which is like a board of directors, which is appointed by the Secretary of the Department of Social and Health Services. Then there is the IOC, the Inspection of Care Committee. That's still in place? Absolutely. And who appoints those folks? That is also appointed by the department. The superintendent has some input, but by the deputy secretary. And those are outsiders to people? Those are outsiders to people? They are currently, yes. Originally, the first IOC was made up of DSHS employees, and the court knew that and had no problem with it and even commented on it. And I think it's footnoted in the brief. And then is there any protocol about what they do or how the administration responds to it at the facility? Your Honor, there is ‑‑ I mean, they are allowed ‑‑ they submit the report. There's an interim ‑‑ or there's a preliminary report, whether they identify deficiencies in the program or not, and then the SEC responds to it, and then they submit a final report after having taken into account the response from the SEC. And how often do they do that? They do it every six months. There is an annual report, and then there are interim reports. But as far as matter ‑‑ Is that a WAC requirement? I would have to refer specifically to the WAC. It does talk about at least yearly reports. The interim report, I think, is optional. So this committee now exists in a statute, or could it be eliminated tomorrow? It's in WAC, the Washington Administrative Code. It requires notice and hearings having to do with if we wanted to change the WAC. But no, it is provided for in our administrative code. There is then the Ombudsman's Office, which handles resident complaints and issues having to do with the conditions of care and they are separate and in a different administration within DSHS, and so there's a different line of reporting. And it comes back together at the Deputy Secretary level, where issues having to do with if the Ombudsman and the Superintendent's Office can't agree, then it goes back to the Deputy Secretary and he hears. Mr. Smith said there aren't a lot of residents enrolled in the program. What's the answer to that? We're about average for the United States. I think right now it's about 40% of the resident population. There are issues having to do with why residents may not be enrolled in the program. About 40% of our population currently is non- or they're pre-commitment, they're detained pending their commitment trial, and most of those people don't participate in treatment on advice of counsel, understandably. But of the ones that are committed, we are within the national average and we're in 2006 and are now. Why aren't 100% of the ones who are eligible in the program? What's the problem? Not enough people or they're not interested or mavericks? Well, it's a very difficult population, Your Honor, and they don't want to participate in treatment because they don't believe they need it. They don't choose to? They choose not to participate. So it's not a question of they don't have enough staff to accommodate the people they don't want? They can accommodate all the people who wish to participate. Your Honor, the court should affirm the order below. The court applied the proper standard. The plaintiffs agreed to a way of going forward in this case that allowed them to present the evidence and argument that they wanted to. Why wouldn't it have made more sense to have an evidentiary hearing? Essentially, Judge Martinez was making credibility determinations. To some degree, wasn't he? When he was saying, well, the report says X, but the superintendent says Y, and essentially I choose to believe Y. Is that not what was happening? No. And it's because of the agreement that was made in the January 2006 hearing where the plaintiff's attorney, Mr. Caray's attorney, says I can get all the information in my declaration. I can get the information I need in through declarations. And I'm not sure that that's the standard, whether it makes more sense or not. Well, that was probably a bad accusation. Weren't there contradictory statements that were essentially resolved on papers? I believe that there were contradictory statements. I have a lot of agreement that you're talking about then. My understanding is that there was a representation that he would have an evidentiary hearing if he thought it would make a difference, and the only reason he decided it wouldn't make a difference is because he made, at least to some degree, because he made credibility resolutions on a cold record. So what agreement are you talking about? Well, Your Honor, the record of the January 13 hearing, Mr. Phillips says, yeah, I understand. We'll be guided by the court on whether you want further evidence on this issue. If you wish to have this by declaration, essentially that's okay by me. I understand we are proceeding forward as if we would in summary judgment. Right. And if it was summary judgment and Dr. Briody's and the IOCC said X and Dr. Richards, is that his name, said Y, you'd have a hearing. Well, that might be the case, but I think that what happened is that the court looked at Dr. Briody's declaration and then looked at what the IOCC report actually said and said there really isn't an issue of material fact here. And Dr. Marquez, her declaration, quite simply, was any information he may have had was dated and didn't support the conclusion. We're not here on a summary judgment. We're here on a dismissal. Am I remembering correctly that you need me to step over here? I just want to clarify we're not here on a summary judgment. It was just characterized as proceeding as we would in a summary judgment. Am I recalling correctly that Martinez said he would assume it's true, the submissions of the plaintiff? That's correct. So he took everything he says as true. That's correct, and found that they did not rise to the necessary level. The standard that he was applying, and I think he was, and I think it's clear from the record is that it was new constitutional violation. Okay. Thank you very much, Mr. Richard. Thank you. Mr. Smith, you've got 30 seconds left. How about the evidentiary hearing? Oh, the evidentiary hearing? I don't believe that there was any agreement to dispense with an evidentiary hearing. In fact, one of the pro se plaintiffs had filed a motion for reconsideration of that ruling, and that's covered in our briefs, I believe. In your briefs? I've got your brief right here, page one. It says the record here is undisputed, largely undisputed. Why do you need a hearing? Oh, why do we need a hearing? Because there are some. The record is undisputed. I said largely undisputed, as long as there's any factual disputes, which there are, according to the state, on some issues. I'm only attempting to point out that some of the issues that were raised by the IOCC were undisputed. I don't say that it's completely, that every issue in the record is undisputed. It says accordingly, both the undisputed record and established law warrant reversal. Yeah, and all I'm doing is pointing out there, and in our reply brief, what we do is go through and say, here are all the allegations in the IOCC report that there's no dispute about, right? That may be 80% or 90% of them. That doesn't mean that there's still not 10% that were disputed. Did Judge Martinez assume the truth of what you submitted? I don't think that that's ñ I don't recall that from the record. It's unclear from his opinion. He has a line in there where he suggests that he is, but it's far from clear. It's what he says, right? Well, it's far from clear. What he says is, I find that there's backsliding, and then he makes some statement, and I just don't have access to it. It's in the same sentence where he's saying, well, but even if everything, they say, it's right along those lines. He said, having concluded that none of plaintiff's allegations, even if accepted as proven, persuade the court that significant backsliding has given rise. So he assumes that if you proved everything, he would reach the same conclusion. Yeah, and that's clearly wrong. I don't know how he could do that when this is the most critical IOCC report that we've had in the 17 years of the institution's history. Because then he goes on to say, in this case, neither the 2006 IOC nor Dr. Piotrowski's testimony identifies substantial departure from minimally accepted standard across the profession, especially in light of the testimony provided by other professionals and the underlying reasons for choices to discontinue in certain aspects, et cetera. So he's essentially crediting the alternatives presented by the agency as well. Yeah, the only alternatives was the only people that submitted affidavits that kind of get into the substance of that report were the staff at the SEC, like Dr. Richards. There was one person who discussed some of the procedure, but it was not cited in the opinion. And I don't recall his name, but the ones that actually dealt with the substance were the SEC administrators. Thank you, Mr. Smith. Your time is up. Thank you, Mr. Richard. I have to. Mr. Smith, I know you and your firm have taken this on a pro bono basis. We very much appreciate your having done that. Thanks very much. Case argued as submitted.
judges: Silverman, McKeown, Berzon